Good morning. This case, which has already been three years since the Bankruptcy Court made its decision as in winning its way through the courts, involves an important issue for a bankruptcy administration, which is what is the standard to be applied for the removal of a trustee? What is caused for the removal of a trustee after the trustee has been appointed? This is a matter as to which there is very little clear authority. The Bankruptcy Court believed that there was no governing authority in this circuit. I believe that the court was right about that. We have proposed a ten-part test that could be used by the... Is that right? Correct. And that's right? So we can check that right off. So we've got two issues resolved before you've used... All right. The issue now is whether, under the facts of this case, the Bankruptcy Court abused its discretion in granting the motion to remove... Well, you are right. Yes. But I believe it... And what standard do you apply in reaching that end? Correct. Okay. We have proposed a test. We believe that the standard applied by the Bankruptcy Court was not appropriate. We refer to the BHP case as having, although not articulated a standard to the full extent that we're proposing now, as having applied the appropriate perspective on the matter. And the appellees agree with us on that. So I think we're basically effectively in agreement on what the standard should be. And then the question appears to be whether or not the facts of this case warrant removal under the standard that we both agree on. Don't we ask whether the Bankruptcy Court abused its discretion in removing Ms. Dye under that standard? Excuse me, Your Honor? Are we looking to see whether the Bankruptcy Court abused its discretion in removing Ms. Dye under the totality of the circumstances standard? Yes, Your Honor, but I'm looking for something for a standard for removal. Discretion, it has to be more than simply a vague notion of discretion. Discretion can be informed by a test and a standard. And if, under the facts of this case, a trustee can be removed after three and a half years of service, it will wreak complete havoc with the bankruptcy system. Because a trustee, in effect, can be the circumstances of the trustee's appointment in the beginning can be revisited by a litigation opponent very deep into the case, creating complete havoc with the administration of the estate. It would be open seizing on trustees. There has to be some standard besides simply discretion. Well, it's totality of the circumstances, and one of the circumstances might be the length of time that they've served, I suppose. Yes, Your Honor. In this case, the we do not dispute the factual findings that were made by the court. We only dispute whether or not under a consideration of the factors that should apply to the removal of a trustee, whether or not this trustee should have been removed. Remarkably, it is the FLE that seems to be in conflict with the factual findings made by the court. And this case, certainly, one resolution that would be seemingly would satisfy both sides would be to simply remand the matter to the bankruptcy court with a correction of the standards that should be used, and a deprecation of the factors that should be considered by the court, and the court can make all the factual findings that it wants. A counsel has got a very, very extensive record here, far beyond what the court considered at the time of the removal, and essentially argues a factual position completely at odds with what the bankruptcy court found. So simply sending the matter back to the bankruptcy court so that a counsel can argue anything he wants, and the court can apply a more coherent standard than the one that it applied would be, I think, a fair result. The key issue, or at least one of the key issues, seems to be that this guy had previously represented Meister and Erickson, or had some prior interactions with them, and then that cast some doubt as to whether her decision not to sue them as a trustee was caused by this prior representation or contact. Why isn't that enough under the totality of circumstances or other standard that the bankruptcy court and the BAP apply? Well, let's take each person in turn. First, Mr. Erickson. The trustee disclosed that she had represented Erickson at the time of her appointment. Is that enough, given that she didn't give his name or any details about the representation or what she might have learned in that context? The record shows that she gave the name to the U.S. trustee. She just didn't put it in her application. But I don't know that giving the name made a difference, because if somebody had a problem with that, they could have asked. Ordinarily, you don't go into great detail about your former representation. But, again, this case is not about whether she should have been appointed based upon what the U.S. trustee knew at the time. It's not about whether, with the benefit of hindsight, she should have been appointed. It's about whether she should be removed three and a half years into the case. As to Erickson, it was disclosed that she had represented a former investor and that the investor had recovered his investment. And whether or not it was disclosed, isn't the question whether it affected her judgment in deciding whether or not to sue him as trustee? Isn't that the conflict question or the cause issue? Well, if there was an actual conflict, if the court had found that he should have been sued, absolutely. Then the other trustee should have been removed. But the court expressly did not make such a finding, declined to make such a finding. But if you're, so your bottom line actually seems to be that there has to be an actual, where I gather you are in a disagreement with the BAP's decision is that you think the standard has to be that there's an actual conflict, not the potential for conflict or the appearance of conflict. And the BAP thought appearance or potential was sufficient if you were going to apply the totality of the circumstances test. So isn't your argument that there has to be an actual conflict in conflict with the totality of the circumstances standard? No, Madam Justice, because I think that if there was an actual conflict, no question, then she should have been removed. But there was no factual finding to support an actual conflict. Well, but so you're saying there has to be an actual conflict, which is a different standard than the totality of the circumstances standard. No. The bankruptcy court basically was finding a lack of disclosure. And if there was a lack of disclosure at the time of the appointment, that would also be grounds. But the question is, as to Erickson, that there was disclosure. As to Meister, the question was whether or not there was anything to disclose. The trustee had represented Meister six years before the bankruptcy was filed in a routine bankruptcy. And bankruptcy lawyers have very extensive practices for Chapter 7 bankruptcies. It was completely unrelated to the AFI matter. She also testified that she had represented him. And this is something she didn't remember, but something that she eventually did remember and testified about. She also testified that she had represented him in connection with his departure from, again, an unrelated employer approximately two years before the bankruptcy, where she was simply shown a resignation agreement. And she may have looked at it for ten minutes. Counsel would like to argue that there's evidence that she also represented him in connection with his departure from AFI four years before the bankruptcy, but the evidence was to the contrary. And in any event, the court did not make that finding. Both Dye and Meister testified that she did not represent him in that connection. There was no evidence that she represented Meister in connection with AFI. Indeed, in the one serious representation that occurred, which was his personal bankruptcy, he'd only been employed by AFI for a month. If the estate had had viable claims against Meister and Erickson, and she didn't bring them as trustee, and she had these prior client contacts with these people, isn't that a problem? Doesn't that rise to the level of cause? Absolutely. But there'd have to be evidence. Three and a half years into the case, there'd have to be evidence that it had claims. But the court expressly failed to find that there were claims. Well, the bankruptcy court said we'll never know because of the statute of limitations running and the like. But why is it that we'll never know? Aren't those claims or those potential claims against Meister and Erickson capable of being analyzed and determined whether they were at least viable, even if they wouldn't prevail at the end of the day? Well, our brief showed that there actually were no claims against Meister. First of all, that they were barred by the statute of limitations long before the bankruptcy was filed. And secondly, that the attorney who had represented AFI in connection with an assertion of claims against Meister had determined that there was no evidence in support of such claims. And how about Erickson? In the case of Erickson, there was he was just an investor. There's no contention by the Warren parties that there was a claim against Erickson, simply that because other people were sued, he should have been sued. Was he in the class of people who were otherwise sued by the trustees? He was a person who had asserted that he should receive his investment back. And he was eventually given the money back on a compromised amount, and there was a release. Well, but for the release that she had negotiated with AFI, would he have been in the class of people who were otherwise sued by the trustee for recovery of the amounts of money they had received from AFI? If he had not received the release, yes, the answer is yes. So is there a trustee now? There is a trustee now. And how long has that trustee been in place? For three years. And so if the court were to overrule the lower court and the matter was sent back to the bankruptcy court for a determination as to whether or not there should be a removal with a more coherent standard for removal, my client would do whatever is appropriate for the administration of the estate at this point. In other words, she could. This affects her reputation. This affects her right to compensation for three and a half years of work. So is that the remaining issue, whether or not she should be? I mean, if we agree that she should be removed for a cause, does she not get her compensation for those three and a half years? It would be an issue as to whether it would affect her compensation. That's all I can say at this point. It would be an issue. But is it? Is that a factor in the determination of whether she can receive any compensation? Yes, Madam Justice. But it hasn't been addressed by the bankruptcy court, has it? No. So that's just an open issue that we wonder about. Yes, but in other words, if there's a final order that she should have been removed, then that goes into it. So she needs to have a determination as to whether she should have been removed. But in terms of what would actually happen, she could easily decide if it's ultimately decided that she should not have been removed, she could also at that point decide to resign in favor of the current trustee or not. That would be up to the current trustee. This case has been so difficult for everybody concerned. I'm sure the current trustee would be happy to resign. Okay. Well, thank you. Thank you very much. Thank you. Thank you, Your Honors. Just so I make sure my checklist is, you agree with the jurisdiction issue and the standard review that I asked earlier? I do, absolutely. That's clear? Yes. Indeed, this has been a very difficult case. It has not been more difficult for any group of individuals and the clients that I represent. These are 20 individuals who were unwitting investors in what ultimately was deemed a Ponzi scheme, ultimately determined to be a Ponzi scheme as a result of a plea agreement that was negotiated by Carolyn Dye, the trustee who was ultimately removed. At the outset of the case, evidence reflects that there were extensive negotiations between Ms. Dye and Gary Eisenberg, who was the central perpetrator, though not the only perpetrator, of the Ponzi scheme. 150 lawsuits were initiated. My clients were part of the group of 150. Virtually every single investor, whether they had lost money in the scheme or whether they had been fortunate enough to recover their money in some fictitious profits, were targeted for suit, with the exception of very few. And the most notable exception, of course, being Alan Erickson, the former client of Carolyn Dye. And it is these clients of mine that have been forced to shoulder the burden of these issues all the way through the appellate court. There has also been a related appeal with respect to the substantive defenses to the fraudulent transfer actions, and an opinion was recently filed by the Ninth Circuit, I believe on April 22nd, with respect to those issues. And when the court reviews, as the court reviews the record, you will see much of the theory, and it was touched upon briefly here, is that our ultimately successful in the bankruptcy court effort to remove Carolyn Dye was solely a litigation tactic, and motivated by some animus in an effort to defeat the litigation. The Ninth Circuit has now spoken definitively on the issue that that litigation was baseless, and really repudiated the central theory in all 150 of those lawsuits. So it's in that context, and one of the problematic things, obviously, for the panel, is the nature of bankruptcy jurisdiction in general. And that's why the question of finality is so interesting. And there have been recent amendments to, I believe, Title 28 with respect to appellate jurisdiction for interlocutory orders in bankruptcy, allowing for a quick certification process. That wasn't the case at the time that this was unfolding, but I think what it underscores is the totality of the circumstances, which is the phrase of the BAP, or the panoply of events, which is used by the Third Circuit in the BHP decision, which was adopted in large part by the BAP, is extremely broad here, and extremely textured. And when it is said that the appellate does not take issue with the findings, and yet we do, I think that's an interesting flag for the panel. And I think it's an indication that one would be well served to look beneath the canopy, the canopy of the removal, into the actual facts that were presented to the court. And also the facts that were left hanging in the air, questions of fact, if you will. Because the removal here, and what really informed this ultimately discretionary standard, which in my view goes to core principles of equitable bankruptcy jurisdiction, it really, in its purest sense, a four-cause standard articulated under the code, in which the best case law, and we agree on that, speaks in terms of a totality of circumstances. I want to just take you back to the finality point that the BAP, in its footnote 6, said that additionally this order is final and appealable, and then it cites the Seventh Circuit, the Third Circuit, and the Tenth Circuit, and omits any decision from the Ninth Circuit. Has that question ever been decided by the Ninth Circuit in a published opinion? With respect to the removal of a trustee? I am not aware of any published decision in the Ninth Circuit relating to a removal of a trustee. So the slate is completely blank on that. And as I can speak as a general proposition, there are many interim-type orders that have profound effect in the bankruptcy process which do not become final until the culmination of the case. So it can really drag for years. For example, and really pertinent to this case, awards of attorney's fees, interim awards of attorney's fees, they're granted, money is actually dispersed from the estate, but they are not technically final for appeal purposes until the ending of the case. Do you know whether those courts have held that it's a final order or that it's an appealable interlocutory order? I'm not sure. I suspect, my best recollection is I believe that this is in the nature of finality, since it disposes of completely the controversy between the parties. Unlike, for example, interim fee applications in which the ultimate determination of fees are due to professionals is reserved, is preserved until the end of the case. Similarly, employment applications can also have that element of being reserved until the final determination of the case. But in this situation where the trustee is removed from this case, and the statute actually speaks in terms of a trustee being removed for cause being removed from all the cases that the trustee serves over. So in that context, my best estimate is that it's a final order. I believe that's where it would come out. In speaking to the standard of removal here, I think it's important to note that there was hardly more than a 30-day period from the time that this motion was filed until the determination of the bankruptcy court was made. And the findings, which the appellant finds so favorable, and frankly we find to be very sympathetic to the trustee, there were certain conflicts or inferences to be drawn from the failure to disclose very material relationships. If the estate did not have a viable claim against Meister and Erickson, would there still be cause to remove this trustee? Absolutely. Why is that? Well, the failure to disclose a relationship, even if ultimately deemed not to be material, but which has some sort of causal relationship. She didn't disclose the relationship with Erickson. Well, let's talk about what she did. She disclosed in a declaration that was neutral and devoid of reference to him by name that she had represented a quote-unquote investor. And why does it make a difference that she didn't put his name in the document, though she told the trustee reportedly? Well, I think this case is a perfect study of why it does. And the reason is because Erickson was the domestic partner of Meister. He was also the Ponzi entity, also an individual with which Carol and I had a personal relationship, and ultimately discovered, not initially disclosed, and more or less disclosed over a series of declarations and statements made to the Court after Meister gave testimony in 2005. And explain to me why that matters, if the estate had no cause of action against Meister or Erickson. Well, assuming that there is no cause of action, and again, there's a substantial amount of evidence, including the testimony of Eisenberg himself, that Meister was in on the looting of the company by Richard Cohen. Right, but if the statute of limitations had run, that would be irrelevant. Well, let's assume that it had run. I'm not convinced that it had under the rules that govern actions, for example, for indemnification that can be asserted defense. But let's assume that it had run. And then the question becomes the nature of the relationship. This, a trustee has such broad and pervasive powers in shaping the case, and this is a perfect example, from negotiating with the Ponzi perpetrator out of the public eye, for the most part, and shaping a plea agreement that defines the scope of his liability, and then lays the claim that the plea agreement constitutes race judicata and collateral estoppel for purposes of fraudulent transfer actions. So you have the trustee negotiating with the perpetrator. Well, I was with Eisenberg, right? Eisenberg, correct. And you're not alleging that she had a client relationship with Eisenberg? I'm not. But the client relationship with somebody else who's being implicated in the scheme that is not disclosed, certainly one could imagine. But one could speculate and hypothesize on how the case could be shaped so as to turn attention away from Meister and away from Erickson. And there's a significant amount of evidence of that. When you have 150 lawsuits and one of the few handful that isn't asserted is against Erickson, again, significant that he wasn't named at the time of the disclosure, which would enable an analysis of who this party was. But as to Meister, somebody who conceivably could have been swept into an investigation and litigation, because, again, Robert Lowe, another party who was involved in the Ponzi scheme, was sued. Richard Cohen wasn't, and the reason was because there was some sort of determination, and again, it wasn't made in a very transparent way, that he was judgment-proof and he had been in jail. But Meister was clearly part of that group, that central group of insiders. So not knowing about the representation until after Meister disclosed it years later, and then the way that the disclosure is made. Remember, you really have to parse the testimony under oath, the disclosures under oath of the trustee in 2005 as they came out. She first sat for a deposition in, I believe, February of 2005, and mentioned only a personal relationship with Meister, not having represented him at all. Then after Meister testified, she came back and made significant revisions to her deposition transcript. Huge, substantial revisions, probably a page and a half single space, to recharacterize what she really meant when she was testifying. So that's the method of disclosure, and there's case law on failing to disclose, and certainly the method of disclosure. Subsequent to that, a supplemental declaration of disinterested was filed, of disinterestedness was filed by the trustee. And that declaration indicated yet another sphere of representation that conflicted with Meister's testimony. But you're saying that the reason that makes a difference is something to do with the plea agreement? And what was the trustee's involvement in the plea agreement? That's just one example of the broad sweeping powers that a trustee has, and I think why it's important to get full and complete disclosure from a trustee up front of all relationships that might implicate her disinterestedness, her clear-eyed zealousness, and why it's also significant, once the disclosures come out, that they be full, complete, and candid. And how else did it make a difference? And could you also explain what her relationship was to the plea agreement? I don't understand. I can answer with respect to relationship to the plea agreement. She was involved in the fact-finding and negotiation with Eisenberg. One of the interesting features of this case is that it was a criminal case in the district court for securities fraud. Eisenberg entered a plea. That was reduced to a judgment before the district court. One of the ideas and concepts built into that was cooperation with the trustee. It was actually required to give cooperation to the trustee and attempted to do so. There was a coercive element there, obviously, not necessarily improper. But she was involved in that process. She was involved in shaping the statement that became the factual predicate for subsequent lawsuits against virtually everybody except her former client. That level No, she filed the lawsuit. She did, as plaintiff. Right, so to be clear, it's not they were, she, as trustee, filed 150 lawsuits to recover money on behalf of the estate. That's right. And you're saying that the fact she didn't sue Meister or Erickson. Right. She didn't sue Erickson. Clearly was within the category of former investors. And then the notion of the release is an interesting notion, too. And the reason is because even though the release was posed as being the reason Erickson didn't get sued, in the record there is no signed release. It was never produced. Furthermore, there's authority, and it was cited to the bankruptcy court, that a pre-bankruptcy release of claims in the context of fraudulent transfer is part of the fraudulent transfer. Let me just ask you one other question. Had she identified Meister and Erickson and explained the relationship in more detail in the statement of disinterestedness to begin with, would she have been appointed? I don't believe that. I mean, I think this is obviously ultimate speculation. I think one of the stories here, too, is that the United States trustee is not here in this process. You know, they are the watchdog. Because the trustee is the one who appoints, not the court. That's correct. That's correct. And in this setting, the United States trustee is the gatekeeper, the watchdog. Who was the trustee at the time? Stephen Katzman. And, you know, that's one of the real significant tales here, is why these investors, many of whom are identified as victims entitled to restitution in the criminal action, and then were targeted for litigation, have been forced to bear this burden in trying to rectify something that really is a fundamental issue that goes to bankruptcy administration and disinterestedness. I mean, these are not inaccessible, unacceptable cases. These are fundamental, unaccessible issues within the bankruptcy realm and notion of equitable and fiduciary duties. And, in fact, I can cite a case. I apologize it's not there. I may submit a 28J letter. But there is case law clearly on point that the failure to disclose, in and of itself, anything, even if ultimately not dematerial, but which has a logical relationship to the employment, can serve as the basis for removal and removal. Roberts. Thank you. How was she initially selected as a trustee? That's a list? Yes. It's a panel selection process. Right. But as I understand it, there are communications that go on between trustees and lawyers, lawyers advocating for certain trustees. It's not just the next person up? It's not. I don't think it's a blind-wheel process. I think that there was some advocacy that went on for her appointment. By whom? Who would do the advocating? It would be a law firm, her law firm, which I want to be the trustee in this matter? But this is speculation. That's right. Well, I mean, it's not before the Court. I can speak to it. I do know it. But her former law firm was involved in those communications at the outset. And that's the law firm that she was of counsel to, and that's the law firm that continues in the case to this day. But they have a huge panel of potential trustees to select from. Oh, yes. Okay. Yes. All right. Well, thank you very much. And we will hear from counsel in St. Joseph Hospital v. Levitt.
judges: Wardlaw, Ikuta, Beistline